IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

---

FREMONT TELECOM CO., d/b/a
BLACKFOOT COMMUNICATIONS,

                Plaintiff,        Case No. 25-84-M-JTJ

vs.

KYLE ENTERPRISES, LLC, d/b/a     MEMORANDUM AND ORDER
MILLENNIUM,

                Defendant.

---

**I. Introduction**

    Plaintiff Fremont Telecom Co. d/b/a Blackfoot Communications (Fremont) is a Missoula-based corporation that provides residential and commercial telecommunication and Internet services. Fremont filed a Complaint against Kyle Enterprises, LLC d/b/a Millennium (Millennium), a Wisconsin-based limited liability company that supplies fiber optic network materials. The Complaint alleges breach of contract, breach of implied warranty of merchantability, breach of the

1

implied warranty of fitness for a particular purpose, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and constructive fraud. (Doc. 1). The claims center on Fremont's allegation that Millennium delivered defective, nonconforming, and unusable fiber optic cable. (Id. at ¶5). Fremont alleges it paid Millennium more than $400,000.00 for the defective cable. (Id. at ¶4).

Millennium has filed a Motion to Dismiss and Transfer Fremont's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or forum non conveniens, along with supporting briefs. (Docs. 5, 6, and 20). Millennium contends the parties entered a binding contract containing a valid, mandatory forum-selection clause requiring all disputes to be brought in a state or federal court with jurisdiction in Walworth County, Wisconsin. Fremont opposes the Motion. (Doc. 15). The Court heard oral argument on December 9, 2025.

## II. Legal Standard

In federal court, federal law applies to the interpretation of forum selection clauses. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). The appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens. *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

Under federal law, forum selection clauses are prima facie valid and should be enforced unless the resisting party shows enforcement would be "unreasonable."

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). When a contract contains a valid forum selection clause, a court must uphold the clause unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer. *Atl. Marine Const. Co.*, 571 U.S. at 52. These extraordinary circumstances exist only where: (1) the clause is invalid due to fraud or overreaching; (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision; or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of their day in court. *M/S Bremen*, 407 U.S. at 15; *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019). In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain. *Atl. Marine Const. Co.*, 571 U.S. at 66.

## III. Discussion

### A. Freemont is bound by the forum selection clause in the 2016 Credit Agreement between Blackfoot Telephone Cooperative and Millennium

#### 1. Parties' Positions

It is undisputed that Fremont Telecom Co. placed three orders with Millennium in late 2021 and early 2022 for the purchase of fiber optic cable. Millennium contends that these purchases are subject to a forum selection clause contained in a 2016 Credit Agreement between Millennium and Blackfoot

Telephone Cooperative because Fremont and Blackfoot Telephone Cooperative should be treated as the same entity. (Docs. 6 and 7). Millennium argues that Fremont is subject to the Credit Agreement's forum selection clause because Fremont uses the assumed business names d/b/a Blackfoot Communications and Blackfoot Communications d/b/a Blackfoot Telephone Cooperative. During oral argument, Fremont clarified the corporate relationship between Fremont and Blackfoot Telephone Cooperative. Specifically, Fremont advised that it is a wholly owned subsidiary of BTC Holdings, and BTC Holdings is a wholly owned subsidiary of Blackfoot Telephone Cooperative. Nonetheless, Millennium maintains its position.

Fremont argues that the 2016 Credit Agreement does not apply to it because the Credit Agreement made no mention of affiliates or subsidiaries, and the 2021-2022 purchases between Fremont and Millennium were made pursuant to separate purchase agreements. (Doc. 15, p. 6). Fremont argues that the 2021-2022 purchases involved Millennium sending Fremont a quotation, which Fremont advised it would accept by sending a purchase order referencing the quotation. Millennium then confirmed acceptance of the order by sending an order acknowledgment, and after the order, Millennium sent Fremont an invoice. Fremont would then send a check referencing the invoice. (Id. at pp. 8-11).

Finally, Fremont contends that the 2016 Credit Agreement did not contain material terms for every future purchase agreement between the parties, such as the products, quantities, and prices of those future purchase agreements. Therefore, Fremont argues, the 2016 Credit Agreement cannot be specifically enforced as to the 2021 and 2022 purchase agreements at issue in this case because these agreements are separate and have no reference or relationship to the 2016 Credit Agreement and do not arise out of or relate to it. (Id. at pp. 17-21).

Millennium counters that Fremont makes a sophistical argument about the distinctions between the corporate entities. (Doc. 20, p. 5). Millennium contends the entities are one and the same and are all bound by the 2016 Credit Agreement's forum selection clause. (Id.). Additionally, Millennium contends that Fremont cannot dispute that the 2021 and 2022 purchases were billed using the line of credit that originated with the 2016 Credit Agreement. (Id. at p. 7). Further, Millennium notes that the email exchanges between it and Fremont regarding the 2021 and 2022 purchases have a link to the terms and conditions, which also contains a forum selection clause. (Id. at p. 9).

### 2. Totality of Circumstances

In determining whether Fremont, as a non-signatory to the 2016 Credit Agreement, is bound by its forum selection clause, the Court is guided by other decisions that have considered the issue. The Ninth Circuit has upheld a forum-

5

selection clause against non-signatories when the alleged conduct of the non-signatories was so closely related to the contractual relationship that it was foreseeable the non-signatory would be bound by it. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988).

Courts considering whether a non-signatory is sufficiently "closely related" to the contract to be bound by a forum-selection clause must apply a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. *Oregon-Idaho Utilities, Inc. v. Skitter Cable TV, Inc.*, 2017 WL 3446290, at *9 (D. Idaho Aug. 10, 2017) (quoting *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012)). This approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute. *Id.*

In reviewing the totality of the circumstances, the Court notes that Fremont's Complaint avers that Blackfoot Communication has "regularly conducted business with Millennium for its Montana operations since at least September 2016." (Doc. 1, ¶ 14). This assertion supports Millennium's contention that the three purchase orders referenced in the Complaint were billed using the line of credit that originated with the 2016 Credit Agreement. (Doc. 20, p. 8). The fact that Fremont did not have

to pay for the fiber optic cable up front further supports Millennium's contention that the three purchase orders in the Complaint were made pursuant to this line of credit.

Additionally, a review of the record supports Millennium's position that its business relationship with Fremont is closely related to Blackfoot Telephone Cooperative's 2016 Credit Agreement. The August 24, 2016, "General Information for Credit and Purchase Agreements" submitted as part of the 2016 Credit Agreement (Doc. 7, Exhibit A, p. 9), uses the name Blackfoot Telecommunications Group on its letterhead. The affidavit submitted by Fremont from Beau Bailey (Document 15-4, ¶ 2) states that he is the "Director of Finance for various entities using the name Blackfoot Communications, including Fremont Telecom Co.," and that Fremont Telecom Company's former d/b/a name was Blackfoot Telecommunications Group.

Accordingly, at the time Blackfoot Telephone Cooperative entered into the 2016 Credit Agreement with Millennium, it used the same assumed business name or d/b/a name, Blackfoot Telecommunications Group, that Mr. Bailey states Fremont Telecom Co. formerly used as its assumed business name or d/b/a. Both Blackfoot Telephone Cooperative and Fremont now use the d/b/a Blackfoot Communications. Therefore, at the time Fremont placed its orders with Millennium, it was using the same d/b/a as its parent company, Blackfoot Telephone Cooperative. Although the use of the same assumed name or d/b/a does not automatically bind

Fremont to the 2016 Credit Agreement, it supports Millennium's belief that it was dealing with the same customer.

Moreover, the record shows that the same address - 1221 N. Russell Street, P.O. Box 16600, Missoula, Montana 59805 - was used in both Blackfoot Telephone Cooperative's 2016 credit application with Millennium (Doc. 7, Exhibit A, p. 5) and in the order acknowledgments for the 2021 and 2022 purchases Fremont made from Millennium. (Docs. 15-1, p. 4; 15-2, p. 4; and 15-3, p. 4). The order acknowledgments further show that Millennium billed Blackfoot Telecommunications Group for Fremont's purchases at the same Missoula address listed on the 2016 credit application and shipped the materials to Blackfoot Telecommunications Group at the address 100 E. Main Street, Saint Anthony, Idaho 83445, the same address Fremont lists on its purchase orders. (Docs. 15-1, p. 3; 15-2, p. 3; and 15-3, p. 3).

Additionally, the letterhead on Fremont's purchase orders uses the name Blackfoot Communications. As noted above, Fremont admits Blackfoot Communications is now the assumed d/b/a name for Blackfoot Telephone Cooperative (Bailey affidavit, Doc. 15-4), replacing the prior assumed name Blackfoot Telecommunications Group. The registration of assumed name filed with the Montana Secretary of State shows that Blackfoot Telephone Cooperative and Blackfoot Communications use the same Missoula address. (Doc. 20, Exhibit 2).

All of the above facts—including that Fremont's 2021 and 2022 purchases were placed under the same d/b/a as Blackfoot Telephone Cooperative; billing was sent to Blackfoot Telephone Cooperative's address, with no objection from Fremont; and credit was extended to Fremont—illustrate that the purchases at issue are closely related to Blackfoot Telephone Cooperative's 2016 Credit Agreement and that Fremont and Blackfoot Telephone Cooperative acted as the same entity regarding their business interactions with Millennium. Under the totality of the circumstances, Fremont is bound by the 2016 Credit Agreement's forum selection clause. This conclusion is consistent with the UCC's course of performance and course of dealing principles set forth in Mont. Code Ann. § 30-1-205 and is consistent with the concept of equitable estoppel.

Even if the Court were to conclude Fremont was not bound by the Credit Agreement signed by its parent company, Blackfoot Telephone Cooperative, the Court also finds the forum selection clause contained in the "terms and conditions" linked in the order acknowledgments between Fremont and Millennium for the three purchase orders at issue also applies. Fremont's acceptance of those acknowledgments by performance and without objection, combined with the parties' course of dealing using the same d/b/a, constitutes objective assent to this forum selection clause. UCC § 2-207(2)(b)-(c).

**B. The forum selection clause is valid and enforceable**

9

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Construction Company*, 571 U.S. 49, 62 (2013). The narrow exception to this general rule applies if the plaintiff can demonstrate "extraordinary circumstances" unrelated to the convenience of the parties that clearly disfavor a transfer. Id.

In determining whether extraordinary circumstances exist, the plaintiff must make a strong showing that (1) the clause is invalid due to "fraud or overreaching"; (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision; or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant for all practical purposes will be denied their day in court. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018).

Fremont argues that if the forum selection clause from the 2016 Credit Agreement applies, it is invalid and unenforceable as a matter of Montana law and public policy based upon Mont. Code Ann. § 27-1-412(5). (Doc. 15, p. 22). This section provides that "an agreement the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable" cannot be specifically enforced." Fremont contends that it is impossible that the terms of all future orders between Millennium and Fremont from 2016 to the present were

"sufficiently certain" or clearly ascertainable in 2016. The products, quantities, and prices of every future purchase agreement (material terms to an agreement for the sale of goods) were in no way determined by the 2016 Credit Agreement. (Id.).

Millennium contends that Fremont misapprehends the effect of Mont. Code Ann. § 27-1-412(5). This statute relates to obligations that cannot be specifically enforced, and Millennium is not attempting to enforce specific performance of the contract. (Doc. 20, p. 17). Further, Millennium contends that the Court cannot read the 2016 Credit Agreement in isolation, as "several contracts relating to the same matters, between the same parties and made as part of substantially one transaction are to be taken together." Mont. Code Ann. § 28-3-203. (Id.).

The Court agrees with Millennium. Fremont's reliance on Mont. Code Ann. § 27-1-412(5) is misplaced. This provision expresses no public policy directed at forum selection clauses. It addresses contracts whose terms are insufficiently certain to permit a court to compel performance of a "precise act." A forum selection clause does not impose an obligation to perform a specific act subject to specific performance. Rather, it is a procedural agreement allocating the forum in which disputes will be resolved and is enforced through motions to dismiss or transfer, not through an order compelling performance. Since Fremont has not shown that enforcement of the forum selection clause would contravene a strong public policy in Montana, and this is the only argument Fremont makes as a basis for applying the

exception to enforcement of the forum selection clause, the Court finds the forum selection clause valid and enforceable.

## IV. Conclusion

In 2021 and 2022, after Fremont's parent company, Blackfoot Telephone Cooperative, entered into a 2016 Credit Agreement with Millennium that contained a forum selection clause, Fremont submitted orders to Millennium using the same d/b/a. Millennium's order acknowledgement forms in response to Fremont's purchase orders incorporated terms and conditions containing essentially the same forum selection clause as the 2016 Credit Agreement.

Fremont received the order acknowledgments, accepted delivery of fiber optic cable, and accepted billing at Blackfoot Telephone Cooperative's address without objection. Fremont's acceptance of the order acknowledgments and continued performance constitute objective manifestations of assent to the incorporated terms and conditions, including the forum selection clause. The parties' repeated transactions under the same d/b/a establish a course of performance and course of dealing demonstrating agreement to the forum selection clause. Fremont has failed to show how enforcement of the forum selection clause violates public policy.

Accordingly, **IT IS ORDER**ED that Millennium's Motion to Dismiss and Transfer Fremont's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or forum non

conveniens (Doc. 5) is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE** pursuant to the doctrine of forum non conveniens.

The Clerk of Court is directed to close this action.

DATED this 12th day of January 2026.

John Johnston
United States Magistrate Judge